IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **JANORD DENZELL WASHINGTON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | A-11-CV-407  LY |
| | § | |
| **RESORT LIFESTYLE COMMUNITIES,** | § | |
| **LAKELINE OAKS** | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion for Summary Judgment and Memorandum of Law in Support Of, filed March 2, 2012 (Clerk's Dkt. #36); Appendix in Support of Defendant's Motion for Summary Judgment, filed March 2, 2012 (Clerk's Dkt. #37); Plaintiff's "Motion for Denial of Summary Judgment and Memorandum of Law in Support of," filed March 30, 2012 (Clerk;s Dkt #41); and Defendant's Reply Brief in Support of Motion for Summary Judgment, filed April 13, 2012 (Clerk's Dkt. #43).  The motion was referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.  After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

Plaintiff Janord Denzell Washington ("Washington") filed this action on May 17, 2011, naming as sole defendant Resort Lifestyles Communities, Lakeline Oaks ("Lakeline"). By way of his complaint,[1] Plaintiff alleges he was employed by Lakeline until April 7, 2010. Washington asserts that, during his employment, he was subject to discriminatory treatment on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). According to Washington, he missed three days of work due to being ill, and was required to obtain a doctor's note to return to work. He alleges other, Caucasian, employees were not required to obtain a note excusing their absences, and their employment was not terminated when they did not timely call in their absences or when they left work sick. Washington also contends other Caucasian employees were permitted to take breaks, use their cell phones and leave work to see a doctor. Plaintiff seeks both injunctive and monetary relief.

Defendant filed a motion for summary judgment on March 2, 2012. Lakeline contends: (1) Plaintiff has failed to present facts sufficient to establish a prima facie case of discrimination; and (2) Plaintiff has failed to rebut the legitimate reasons proffered by Lakeline for its actions or establish they are mere pretext. By order dated March 20, 2012, the Court reminded Plaintiff of the standard for summary judgment and directed him to file a response to Defendant's motion on or before April 6, 2012. On March 30, 2012, Plaintiff filed his "motion" in which he asserts Defendant's motion for summary judgment should be denied. Accordingly, the matters are now ripe for determination.

---

[1] The allegations of Plaintiff's complaints were supplemented by his answers to questions posed by the Court in ordering Plaintiff to file a more definite statement pursuant to FED. R. CIV. P. 12(e).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Wise v. E.I. Dupont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992).

The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 110, 122 (1993).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

### III.  SUMMARY JUDGMENT EVIDENCE

Although Plaintiff filed a pleading responding to Defendant's motion for summary judgment, he did not attach any documents or other summary judgment evidence.  The evidence presented by Defendant in support of its motion for summary judgment is thus uncontroverted and undisputed. *See Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (where plaintiff fails to respond to summary judgment motion, court may accept defendants' evidence as undisputed).

Plaintiff was employed by Lakeline beginning January 26, 2009.  His last day worked was March 31, 2010.  (Def. App. Ex. 1 ("Monroe Aff.") ¶ 6; Ex. 2 ("Washington Depo. 1") at 72; Ex. 3 ("Glass Aff.") ¶ 5).  Frank Monroe ("Monroe") and his wife Donna were the Resident Managers at Lakeline during Washington's employment.  (Monroe Aff. ¶¶ 2-3).  Plaintiff was the A.M. cook at Lakeline in March 2010.  If he did not report for work and did not provide advance notice of an absence, no other cook was available to replace him and cook breakfast for the one hundred or more Lakeline residents.  (Monroe Aff. ¶ 6; Def. App. Ex. 4 ("Washington Depo. 2") at 10-11).

Lakeline had a policy against unexcused absences.  (Glass Aff. ¶ 4 & Ex. 3A at 28-30). Washington knew the policy required an employee to call in two hours in advance if he or she was sick.  (Washington Depo. 1 at 202).  Washington did not report for work as scheduled on April 1, April 2, April 5 or April 6.  (Washington Depo. 2 at 27).  Washington did not call Monroe or anyone else in management at Lakeline on those days.  Nor did he return calls from Monroe or Monroe's wife.  (Monroe Aff. ¶ 8; Washington Depo. 2 at 34-35).  Washington did met with the two Resident Managers on April 7.  According to Monroe, Washington was belligerent during the meeting.  The Resident Managers terminated Washington's employment that day for unexcused absences. (Monroe Aff. ¶ 9; Washington Depo. 2 at 35 & Ex, 17).

Monroe states he and his wife terminated the employment of a Caucasian female cook and a Caucasion male cook for excessive absenteeism, and a third Caucasian female dining room attendant resigned before her employment could be terminated for the same reason. Monroe states that Washington's race and color were not factors or considerations in the decision to terminate his employment. (Monroe Aff. ¶¶ 9-12; Glass Aff. ¶¶ 9-10). Washington is African-American. He admits no one at Lakeline made any comments regarding race or color. (Washington Depo. 1 at 56). At the time of Washington's employment, and thereafter, Lakeline employed other African-Americans. (Glass Aff. ¶ 8; Washington Depo. 2 at 9). Washington also testified during his deposition that he believes the main reason Monroe did not like him is his sexual orientation. Washington further testified he believed his employment was terminated because of his sexual orientation. However, he was unable to file a charge of discrimination on that basis because he was told sexual orientation was not a basis for filing a charge of discrimination with either the EEOC or the State of Texas. (Washington Depo. 1 at 226-27).

## IV.  APPLICABLE LAW

Title VII makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, [age] or national origin." 42 U.S.C. § 2000e–2(a)(1). Liability based on alleged disparate treatment depends on whether the protected trait "actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). That is, the plaintiff's race must have "actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.*

Plaintiff may prove the requisite intentional discrimination using either direct or indirect evidence. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (gender discrimination); *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (racial disrcrimination). Direct evidence of discrimination is evidence that proves the defendant acted with discriminatory intent, without the need for inference or presumption. *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). If direct evidence is unavailable, as is typically the case, the plaintiff may create an inference of discrimination by using the burden-shifting framework enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). In order to create an inference of discrimination, the plaintiff must first establish a prima facie case of discrimination. *Reeves*, 530 U.S. at 142; *Shackleford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir. 1999). Such a prima facie case is established by evidence that: (i) the plaintiff is a member of a protected class; (ii) she was qualified for the position that she held; (iii) she was fired or suffered other adverse employment action; and (iv) she suffered from disparate treatment because of membership in the protected class. *See Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir. 2005) (gender discrimination); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (racial discrimination).

The prima facie case, once established, raises a presumption of discrimination which the defendant must rebut by articulating legitimate, nondiscriminatory reasons for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Shackleford*, 190 F.3d at 404. This burden on the employer is only one of production, not persuasion, involving no credibility assessments. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981). Third, if the employer carries this burden of production, the presumption of discrimination created by the plaintiff's prima facie case "drops out

6

of the picture" and the burden shifts back to the plaintiff to establish intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12 (1993). The plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). *Rachid v. Jack in the Box, Inc.*, 376 F3d 305 311-12 (5th Cir. 2004). Thus, to survive summary judgment, the plaintiff must raise a fact issue as to whether the employer's proffered reason was either mere pretext for discrimination or only one motivating factor. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

## V. DISCUSSION

Defendant has moved for summary judgment as to the merits of Plaintiff's claim on two bases. Specifically, Lakeline argues: (1) Plaintiff has failed to present facts sufficient to establish a prima facie case of discrimination; and (2) Plaintiff has failed to rebut the legitimate reasons proffered by Lakeline for its actions or establish they are mere pretext. Defendant not only informed the Court and Plaintiff of the basis for the motion, but identified portions of the record which Lakeline believes demonstrate the absence of a genuine issue of material fact. *See Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001) (party moving for summary judgment bears initial burden of informing district court of basis for motion, and identifying portions of record which it believes demonstrate absence of genuine issue of material fact). Having met this initial burden, it is incumbent upon Plaintiff to come forward with specific evidence showing a genuine factual issue for trial. *See TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759

(5th Cir. 2002) (once moving party has met initial burden non-movant must come forward with "specific facts" showing genuine factual issue for trial); *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) (Rule 56 does not impose duty on district court to survey entire record in search of evidence to support non-movant's opposition).

The parties do not disagree that Washington was employed by Lakeline and is African-American.[2]  Defendant, however, maintains Plaintiff has failed to establish the remaining elements of his claim of discrimination. According to Lekeline, Washington has not presented any evidence he suffered from disparate treatment as a result of his race. As Lakeline points out, Washington testified in his deposition that he believed he was treated unfavorablty by Monroe due to his sexual orientation, and only identified his claim as race-based when filing his charge of discrimination because he was told discrimination on the basis of sexual orientation could not provide a legal basis for his claim. (Washington Depo. 1 at 226-27). Lakeline has also presented evidence which establishes that other employees, of a different race than Washington, were also terminated for unexcused absences, as well as evidence that Lakeline continues to employ persons of the same race as Washington. (Monroe Aff. ¶¶ 9-12; Glass Aff. ¶¶ 8-10; Washington Depo. 2 at 9).[3] Based on the unrebutted summary judgment evidence presented by Defendants, the Court concludes Washington has failed to establish a prima facie case of discrimination.[4]

---

[2]Plaintiff does take some issue with the precise name of the enttiy which employed him, but does not suggest the defendant he named in this action was not his employer.

[3]In his response,Washington asserts two other employees were not terminated for excessive absenteeism, but rather one quit and the other was terminated for poor performance. He presents no evidence to support his assertion, however.

[4]Washington suggests, for the first time in his response, that he applied for other positions within Lakeline but his applications were denied for racial reasons. He presents no evidence to

Defendant also argues that, assuming Washington could state a prima facie case of discrimination, there were legitimate, nondiscriminatory reasons for the actions taken by Lakeline. As set forth above, Defendant has presented uncontroverted evidence establishing Washington's employment was terminated based on his unexcused absences. Further, Washington conceded no one at Lakeline harassed him or otherwise made remarks regarding his race or color. This undisputed summary judgment evidence articulates legitimate, nondiscriminatory reasons for the actions of Defendant. The undersigned thus concludes Defendant has met its burden of production under Title VII. In turn, Washington has failed to provide any evidence to establish Lakeline's reasons for its conduct are a mere pretext for discrimination or only one motivating factor. He has, therefore, failed to meet his burden of production under the *McDonnell Douglas* burden-shifting framework. Accordingly, Defendant's motion for summary judgment should be granted.

## VI.   RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment (Clerk's Dkt. #35) as set forth above. All other pending motions should be terminated.

## VII.   OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

---

support this assertion, however. Accordingly, he has not rebutted Defendant's argument on this point.

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 23rd day of May, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE